IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


MELISSA K. HUTSON                                                    PLAINTIFF

            v.                          Civil No. 10-3110

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                       DEFENDANT

## MEMORANDUM OPINION

## I.      Factual and Procedural Background

Plaintiff, Melissa K. Hutson, brings this action seeking judicial review, pursuant to 42 U.S.C.

§ 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her application for security income ("SSI") under Title XVI of the Social Security Act ("the

Act").

Plaintiff protectively filed her SSI application on March 21, 2007, alleging disability as of

December 1, 1981, due to bipolar disorder, anxiety, panic attacks, dermatitis, obesity, back and leg

pain, heel pain, acid reflux, asthma, restless leg syndrome ("RLS"), and borderline diabetes.  Tr. 63,

125, 178.  On the alleged onset date, Plaintiff was thirty two years old with a seventh grade

education.  Tr. 26, 74, 129, 243.  She has no past relevant work.  Tr. 73.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 76-79, 81-82.

At Plaintiff's request, an administrative hearing was held on March 25, 2009.  Tr. 22-57.  Plaintiff

was present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision

on August 20, 2009, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 60-75.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on October 4, 2010, thus

-1-

making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Plaintiff now seeks

judicial review of that decision.

## II.   __Medical History__

In 1989, Plaintiff was involved in a motor vehicle accident, which resulted in a fracture of

her left femur and surgical placement of a rod.  Tr. 182, 187.  Plaintiff alleges many of her physical

and mental impairments developed following her accident.

### A.  Robert Ahrens, M.D.

From 2003 through 2008, Plaintiff was treated by Robert Ahrens, M.D., for the following

complaints: heel pain, back pain, wheezing, allergies, RLS, urinary incontinence, and dermatitis.

Tr. 269-270, 294-312.  In April 2007, Plaintiff complained of heel pain, back pain, wheezing, and

peeling skin.  Tr. 270.  On examination, Plaintiff's heels were tender bilaterally and her hands were

scaly and cracked.  Tr. 270.  Dr. Ahrens assessed Plaintiff with dermatitis, bronchospasms, and heel

pain.  Tr. 270.  He prescribed an Albuterol inhaler, anti-inflammatory medication, and referred

Plaintiff to a dermatologist for evaluation of her hands.  Tr. 270.

In May 2007, Plaintiff stated Albuterol helped her wheezing, but she still complained of heel,

back, and leg pain without improvement on anti-inflammatory medication.  Tr. 269.  Dr. Ahrens

diagnosed Plaintiff with RLS and prescribed Ketroprofen, Sinemet, and heel cups for Plaintiff's feet.

Tr. 269.  At a follow-up appointment in August, Plaintiff stated Sinemet and heel cups had improved

her heel and leg pain, but she still experienced back pain.  Tr. 269.  On examination, Plaintiff had

tenderness in her thoracic and lumbar spine.  Tr. 269.  She was given a steroid injection for pain.

Tr. 269.

In May 2008, Dr. Ahrens prescribed Oxybutynin for bladder control and discussed Plaintiff's need to lose weight.  Tr. 305.  In October 2008, Plaintiff complained of abdominal pain and had slightly elevated liver enzymes.  Tr. 296, 301.  An abdominal ultrasound revealed a mildly enlarged and fatty liver.  Tr. 297.  Subsequent laboratory tests performed in December 2008 showed normal liver functioning.  Tr. 294.

### B.  Ozark Counseling Services

In February 2007, Plaintiff began counseling at Ozark Counseling Services ("OCS").  Tr. 233-241, 278-292.  She reported a history of irritability, anger outbursts, mood swings, panic attacks, fatigue, decreased attention and concentration, and low self-esteem.  Tr. 233.  When asked about drug use, Plaintiff stated she used to drink heavily but now only drank once per month and on special occasions.  Tr. 233.  She previously smoked marijuana and intermittently used methamphetamine up until two months prior to the appointment.  Tr. 233.  On examination, Plaintiff appeared anxious and preoccupied.  Tr. 237.  Her affect was constricted and judgment and insight were impaired.  Tr. 237.  Her treatment plan included individual therapy, group therapy, and medication management. Tr. 238.

On February 22, 2007, Plaintiff was pleasant and cooperative and her mood and affect were euthymic.  Tr. 234.  Memory recall was within normal limits, but Plaintiff's attention span was decreased.  Tr. 234.  Insight and judgement were fair.  Tr. 234.  Plaintiff's behavior was spontaneous and well-organized, and she denied any suicidal or homicidal thoughts.  Tr. 234.  R. Steve Austin, M.D., noted no outward signs of anxiety or depression.   Tr. 234.   He estimated Plaintiff's intelligence as average.  Tr. 234.  Dr. Austin diagnosed Plaintiff with depressive disorder, not otherwise specified ("NOS"), personality disorder NOS, a history of substance abuse/dependence,

and rule out bipolar and panic disorders.  Tr. 234.  He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 55.  Tr. 234.  Dr. Austin prescribed Rozerem and Paxil.  Tr. 235.  On March 22, 2007, Plaintiff stated that Rozerem had really helped her sleep.  Tr. 288.  In August 2007, Dr. Austin increased Plaintiff's dosage of Paxil due to continued complaints of irritability.  Tr. 289.

On January 24, 2008, Joel A. Price, M.D., saw Plaintiff and diagnosed her with bipolar II disorder, personality disorder NOS, recurrent major depressive episodes with hypomanic episodes, history of substance abuse/dependence, and history of concussive closed head injury from a motor vehicle accident.  Tr. 290.  Dr. Price estimated Plaintiff's GAF score at 50.  Tr. 290.  Plaintiff had self-discontinued Paxil and Rozerem, so Dr. Smith placed her on Invega and Celexa.  Tr. 290.  In April 2008, Plaintiff reported having two DWI convictions in a short time.  Tr. 291.  Dr. Price diagnosed Plaintiff with depression NOS, alcohol abuse, and personality disorder NOS.  Tr. 291.  He added BuSpar and Rozerem to her medications.  Tr. 291.  By July 2008, Plaintiff stated she was doing well, but had verbally assaulted others.  Tr. 292.  Dr. Price estimated Plaintiff's GAF score at 50 and increased her dosage of Invega.  Tr. 292.  He also referred Plaintiff to a neurologist and a neuropsychiatrist to rule out any underlying cognitive condition.  Tr. 292.

On April 2, 2009, Joan Shepard, Plaintiff's counselor at OCS, completed a Mental RFC Questionnaire, in which she noted diagnoses of bipolar II disorder, agoraphobia, and personality disorder NOS, and a GAF score of 50.  Tr. 339-348.  She found serious memory and concentration problems, high irritability and temper control, high anxiety, and fear of crowds.  Tr. 339.  Ms. Shepard found that Plaintiff had no useful ability to function in eleven unskilled work categories, was unable to meet competitive standards in three unskilled work categories, and was seriously limited, but not precluded, in two unskilled work categories.  Tr. 341-342.  She found that Plaintiff

-4-

would miss more than four workdays per month.  Tr. 342.

        C.  <u>Rolland Bailey, D.O.</u>

Rolland Bailey, D.O., treated Plaintiff for the following impairments: acid reflux, morbid obesity, pre-diabetes, metabolic syndrome, major depression, anxiety, mood disorder, and an abscessed tooth.  Tr. 206-222.  In February 2007, Dr. Bailey discussed Plaintiff's elevated C-peptide level and prescribed a trial of Metformin.  Tr. 209.  On May 30, 2007, Dr. Bailey wrote a letter in which he stated he found no problems with Plaintiff sitting, standing, walking, lifting, carrying objects, hearing, speaking, or traveling.  Tr. 206.  He noted major psychiatric problems including bipolar disorder and panic attacks.  Tr. 206.  He also noted diagnoses of pre-diabetes, with an elevated C-peptide, and marked obesity.  Tr. 206.

        D.  <u>Lonnie Robinson, M.D.</u>

On April 9, 2007, Plaintiff presented to Regional Family Medicine for a second opinion on her diagnosis of pre-diabetes.  Tr. 204-205.  Her height was 5'3" and her weight was 252 pounds. Tr. 204.  Lonnie Robinson, M.D., discussed the possibility of a two-hour glucose test to determine whether Plaintiff was at risk for diabetes.  Tr. 204.  He also discussed lifestyle changes and noted the need for exercise and dietary changes.  Tr. 204.

        E.  <u>Agency Specialists</u>

On June 18, 2007, Steve Owens, M.D., an agency consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment, in which he determined Plaintiff could occasionally lift/carry fifty pounds, frequently lift/carry twenty five pounds, stand/walk/sit about six hours in an eight-hour workday, and push/pull within those limitations.  Tr. 223-230.  He found no postural, manipulative, visual, communicative, or environmental limitations.  Tr. 225-230.

In a Psychiatric Review Technique Form ("PRTF") dated August 23, 2007, Brad F. Williams, Ph.D., determined Plaintiff's impairments did not meet Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). Tr. 248-261. Dr. Williams found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. 258. In a Mental RFC Assessment, Dr. Williams found Plaintiff moderately limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, make simple work-related decisions, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. Tr. 262-263. Dr. Williams found that Plaintiff was not significantly limited in the twelve remaining work-related categories. Tr. 262-263. He determined Plaintiff was capable of performing unskilled work. Tr. 264.

### F.  W. Charles Nichols, Psy.D.

On August 2, 2007, Plaintiff underwent a consultative psychological evaluation conducted by W. Charles Nichols, Psy.D. Tr. 242-247. Plaintiff reported a history of depression, anxiety, panic attacks, irritability, and mood swings. Tr. 242. She was currently engaged in counseling at OCS, which she found helpful. Tr. 243. She reported taking Paxil and Buspar, which improved her mood stability and anxiety. Tr. 243. When asked about substance abuse, Plaintiff stated she drank an average of two to three times per month, consuming about twelve beers in one sitting. Tr. 244. She

also admitted marijuana use within the past month, but denied frequent use.  Tr. 244.  She reported heavy methamphetamine use in the recent past.  Tr. 244.

On examination, Plaintiff was cooperative and pleasant with good humor at times.  Tr. 244. Plaintiff's affect was euthymic and she did not appear overly depressed.  Tr. 245.  Thought processes were efficient and goal-directed.  Tr. 245.  Plaintiff denied suicidal or homicidal ideation.  Tr. 245. Dr. Nichols noted that Plaintiff's substance abuse could very likely be inducing her mood and anxiety problems.  Tr. 246.  He also noted that Plaintiff did not appear to be bipolar, as she did not report the presence of any past manic or hypomanic mood episodes.  Tr. 246.  Dr. Nichols assessed Plaintiff with alcohol abuse, cannabis abuse, methamphetamine abuse, anxiety disorder NOS, and mood disorder NOS, and estimated Plaintiff's GAF score at 61.  Tr. 246.  He noted good social skills, minimal impairment of activities of daily living, below average attention, variable concentration, and below average pace.  Tr. 246.  He also noted that symptom exaggeration was possible, given Plaintiff's conflicting reports of substance abuse, lack of bipolar symptoms, and joking and relaxed attitude during the interview.  Tr. 246.

### G.  Baxter Regional Medical Center

On January 30, 2008, Plaintiff presented to Baxter Regional Medical Center with complaints of a rash on her hands and feet, puffiness in her legs, RLS, and low back pain.  Tr. 311-312.  On examination, Plaintiff had a rash on both hands and edema in both legs.  Tr. 311.  She was given prescriptions for Requip for RLS, hydrochlorothiazide for fluid retention, and Darvocet for pain. Tr. 312.  She was also referred to a dermatologist.  Tr. 311.  On September 17, 2008, Plaintiff was given a steroid injection and referred for chronic pain management.  Tr. 299-301.

      H.  <u>Bruce D. Robbins, M.D.</u>

In August 2008, Plaintiff saw Bruce D. Robbins, M.D., for a neurology consultation concerning her memory problems and anger outbursts.  Tr. 335-337.  Plaintiff's neurological examination was normal with the exception of diminished reflexes.  Tr. 336.  An electroencephalogram ("EEG"), performed on August 25, 2008, was normal.  Tr. 334.  An MRI of Plaintiff's head revealed some increased signal in the left internal ear canal and a suspicious area in the left MCA, likely representing tortuosity of the arteries vs. a small aneurysm.  Tr. 333.  Dr. Robbins prescribed Gabapentin and recommended a magnetic resonance angiogram ("MRA").  Tr. 332, 336.  MRA findings showed no specific abnormalities or evidence of aneurysm.  Tr. 331.

      I.  <u>James Hawk, M.D.</u>

On November 18, 2008, Plaintiff presented to James Hawk, M.D., for pain management.  Tr. 314-325.  On examination, Dr. Hawk noted diffuse mild to moderate tenderness in the paraspinal area, guarding of the left hip during rotation, and some mild laxity of the left knee.  Tr. 319.  He diagnosed Plaintiff with osteoarthritis, degenerative joint disease, morbid obesity (contributory to joint disease), peptic ulcer disease, depression, anxiety, insomnia, fatty liver with abnormal liver enzymes, and chronic pain syndrome.  Tr. 319.  He prescribed Tofranil, Piroxicam, Neurontin, and Vicodin.  Tr. 319-320.  Dr. Hawk also instructed Plaintiff on weight loss and home exercises.  Tr. 320.  In January 2009, Dr. Hawk noted mild tenderness, especially in the lumbar spine.  Tr. 314.  He assessed Plaintiff with low back pain/strain, muscle spasms, and chronic pain syndrome, but found that Plaintiff's pain was improving.  Tr. 314.

J. <u>Vann A. Smith, M.D.</u>

On April 1, 2009, Plaintiff saw Vann A. Smith, Ph.D., for a consultative neuropsychological evaluation.  Tr. 350-358.  Plaintiff reported occasional alcohol consumption.  Tr. 350.  On examination, Plaintiff was oriented in all spheres.  Tr. 350.  Her memory was impaired, but her judgment and insight were grossly intact.  Tr. 350.  Narratives were fluent and informative and thought processes were functional in quality.  Tr. 350.  On the Wechsler Adult Intelligence Scale-Revised, Plaintiff received a verbal score of 83, a performance score of 85, and a full-scale score of 82.  Tr. 351.  After administering various tests, Dr. Smith diagnosed Plaintiff with cognitive dysfunction, non-psychotic, secondary to general medical condition(s), and borderline intellectual functioning.  Tr. 353.  He estimated Plaintiff's GAF score at 35.  Tr. 354.  It was Dr. Smith's opinion that Plaintiff was disabled.  Tr. 352.

In a Mental RFC Assessment, Dr. Smith found Plaintiff unable to meet competitive standards in six unskilled work categories and seriously limited, but not precluded, in the ten remaining unskilled work categories.  Tr. 356.  He determined Plaintiff would miss more than four workdays per month if employed.  Tr. 357.

### III.    Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's

decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   **ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since March 21, 2007, the application date.  Tr. 65.  At step two, the ALJ found Plaintiff suffered from depression, drug/alcohol abuse, status-post leg fracture, and obesity, all of which were considered severe impairments under the Act.  Tr. 65-68.  At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 68-70.

At step four, the ALJ found Plaintiff had the RFC to perform medium work[1] with frequent postural limitations.  Tr. 70-73.  Mentally, the ALJ determined Plaintiff could perform unskilled work where interpersonal contact is incidental to the work performed.  Tr. 70-73.

Once the ALJ determined Plaintiff had no past relevant work, she moved to step five.  Tr. 73.  After receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2]  Tr. 74-75.  Accordingly, the ALJ determined Plaintiff was not under a disability from March 21, 2007, the application date, through August 20, 2009, the date of the decision.  Tr. 75.

## V.   **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (1) failing to find all of her impairments severe; (2) failing to afford proper weight to her treating physicians; and (3) improperly dismissing

---

[1] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty five pounds.  20 C.F.R. §§ 404.1567(c), 416.967(c).

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as linen room attendant, of which there are 70 jobs regionally and 77,000 jobs nationally, meat clerk, of which there are 4000 jobs regionally and 114,000 jobs nationally, and kitchen helper, of which there are 3000 jobs regionally and 373,000 jobs nationally.  Tr. 74.

the opinion of Dr. Smith.  *See* Pl.'s Br. 6-22.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel.  *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician.  *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone).  While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances."  *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis.  *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Given Plaintiff's consistent complaints of back pain despite treatment with medication, ongoing pain management, and steroid injections, the undersigned questions whether she is capable of performing medium work with frequent postural limitations.  In her analysis, the ALJ noted that "there are no imaging studies demonstrating a back abnormality." Tr. 66.  This is due to the fact that no imaging studies were *performed*, not because Plaintiff indeed has no back impairment.  While the court recognizes that it is not the ALJ's duty to provide continuing medical treatment for a claimant, *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003), there must be sufficient evidence in the record for the ALJ to make an informed decision regarding a claimant's limitations.  *See*

*Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (ALJ is required to order medical examinations and tests only if the medical records do not give sufficient medical evidence to determine whether the claimant is disabled).  In this instance, the ALJ should have ordered a consultative physical evaluation with imaging studies to determine the underlying etiology of Plaintiff's back pain and the full extent of her resulting physical limitations.

Additionally, the ALJ's failure to identify Plaintiff's back pain as severe was not harmless error.  As noted by the Eighth Circuit, the standard for determining whether a claimant suffers from a severe impairment is a low or *de minimus* standard.  *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (reversing the decision of the ALJ and holding that a diagnosis of borderline intellectual functioning should be considered severe when that diagnosis is supported by sufficient medical evidence).  The frequency and consistency of Plaintiff's complaints as well as the medical evidence of record suggest that Plaintiff's chronic back pain had more than a minimal effect on her ability to work.  For these reasons, the court finds that reversal is warranted.

For the aforementioned reasons, substantial evidence does not support the ALJ's determination.  On remand, the ALJ should send Plaintiff for a consultative physical examination and obtain imaging studies of her back.  Once a proper assessment is completed, the ALJ should reconsider Plaintiff's physical impairments and their effect on her ability to engage in substantial gainful activity.

## VI.    **Conclusion:**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence,

including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 3rd day of February 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE